IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**JAMES LEE SKINNER, #T9841**  PLAINTIFF

**V.**  CIVIL ACTION NO. 2:08cv143-MTP

**PENNY BUFKIN, ET AL.**  DEFENDANTS

## OPINION AND ORDER

THIS MATTER is before the court on the Motion for Summary Judgment [26] filed by the Defendants. Having reviewed the submissions of the parties and the applicable law, the court finds that the Motion [26] should be granted and that this action should be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff James Lee Skinner, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on July 11, 2008. Plaintiff's claims arose while he was incarcerated at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi, where he is currently serving an eighteen-year sentence after having been convicted of the delivery of a controlled substance and the unlawful touching of a child in Harrison County.

Through his complaint and as clarified during his *Spears*[1] hearing, Plaintiff alleges claims against Defendants Penny Bufkin, Ron King, Christopher Epps, Theresa Seabrook, Charles Scarborough, Michael Garney, and Wallance Carpenter for violating his constitutional rights, as

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on April 21, 2009.

1

discussed in detail below.[2] (Scheduling and Case Management Order [25].) Plaintiff seeks injunctive relief and monetary damages. (Compl. [1].)

On July 21, 2009, the Defendants filed their Motion for Summary Judgment [26]. Plaintiff filed his response [28] in opposition to the motion on August 10, 2009.

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of

---

[2]After Plaintiff clarified his claims at his *Spears* hearing, the court dismissed several claims and parties. (Scheduling and Case Management Order [25].) Specifically, the court dismissed Plaintiff's claims for the denial of adequate medical treatment, excessive force, and failure to investigate, as well as the following Defendants: Lonnie Mills, Kimberly Green, Graner Leverette, and Captain Don Lewis. *Id.*

2

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a

3

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

**Cruel and Unusual Punishment/Due Process Violations**

Plaintiff alleges claims against Defendants Penny Bufkin, Ron King, Christopher Epps, Theresa Seabrook, and Charles Scarborough for cruel and unusual punishment and/or violation of his due process rights. Specifically, he claims that he was placed in the Security Threat Group ("STG") Core Member Program,[3] a type of lockdown, on May 15, 2007, for a term of six months, even though he had not been issued a Rule Violation Report ("RVR") for over six months. Plaintiff asserts that he should have been released from the STG Program on November 15, 2007, because he met all the requirements; however, Penny Bufkin refused to release him.

Plaintiff further claims that Theresa Seabrook is over classification and saw his file at the STG meeting and knew he should have been released, but refused to acknowledge that he had met all the requirements. Ms. Seabrook allegedly stated that he was denied reclassification

---

[3]An STG is "Any formal or informal organization, association, or group of persons, which may possess a common name, identifying sign or symbol whose members or associates currently engage in or have engaged in illegal activities prior to confinement and/or MDOC policy violations/unlawful acts during confinement." *See* MDOC Policy SOP Number 16-19-03, Ex. B to Motion [26-3].

4

because she had knowledge that an RVR would be written. Similarly, he claims that Charles Scarborough, his case manager, refused to reclassify him.

Plaintiff claims that Ron King has the authority to determine whether someone should be released from the STG Program. Plaintiff alleges that he talked to Mr. King personally and that Mr. King reviewed his file; however, Mr. King failed to take the proper action to have him reclassified. Similarly, he claims that he wrote a letter to Christopher Epps asking for his help, and Mr. Epps failed to take any action to have him reclassified.

The record reflects that on May 15, 2007, Plaintiff was identified as a disruptive and/or destructive STG Core Member who posed a threat to the safe and secure operations of the MDOC and a threat to public safety. (Resp. [8-2] at 8.) Plaintiff's status was reviewed at the quarterly STG evaluation on October 16, 2007, and it was recommended that he remain on STG status due to not having been in the program for at least six months. *Id.* at 9.

Plaintiff's status was reviewed at the next quarterly STG evaluation on January 15, 2008, and it was recommended that he remain on STG status due to not being RVR-free for six months, with the notation "pending RVR." *Id.* at 10. The record reflects that Wallance Carpenter issued Plaintiff an RVR (#66421) the morning of the review (January 15, 2008 at 6:25 a.m.) for violating Rule 35.[4] *Id.* at 1. As discussed below, Plaintiff claims this RVR was falsely issued. Plaintiff attended a disciplinary hearing where he denied the charges. He was found guilty and was reclassified, reassigned, and received twenty days of isolation. *Id.*

---

[4]Rule 35 is a catch-all rule entitled "Attempting to commit any of the above." *Id*. at 1. As discussed *supra*, this RVR was issued because Plaintiff allegedly told Officer Carpenter that he was going to set fire to or flood his cell if he was not returned to the general population. *Id.*

5

Plaintiff filed a request through the Administrative Remedy Program ("ARP") and his relief was denied. (Resp. [8-2] at 11; Compl. [1] at 6.)

The record reflects that Michael Garney issued Plaintiff an RVR (#67095) on March 18, 2008, for violating Rule 19. (Resp. [8-2] at 2.) Plaintiff attended a disciplinary hearing where he denied the charges. He was found guilty and lost all of his privileges for thirty days. *Id.* Plaintiff claims this RVR should have been dismissed due to administrative error; he did not file an appeal. Plaintiff claims this RVR started his six-month term of STG over as of the date of issuance.

The record reflects that Garner Leverette issued Plaintiff an RVR (#67224) on May 16, 2008, for violating Rule 19. *Id*. at 3. Plaintiff attended a disciplinary hearing where he denied the charges. He claims the officer's witness lied and stated that he refused to go in his cell. (Compl. [1] at 5.) He was found guilty and was reclassified, reassigned, and lost all of his privileges for thirty days. (Resp. [8-2] at 2.) It is unclear whether Plaintiff appealed this RVR. Plaintiff claims this RVR started his six-month term of STG over as of the date of issuance.[5]

According to Plaintiff's most recent administrative review in the record (June 29, 2009), he remains in the STG Program. (Ex. E to Mot. [26-5].)

The Fifth Circuit has repeatedly held that "[p]rison officials should be accorded the widest possible deference in classifying prisoners' custodial status as necessary to maintain security and preserve internal order." *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (internal citations and quotations omitted). Liberty interests protected by the Due Process

---

[5]The record reflects that Plaintiff was issued several RVRs prior to the first one referenced in his complaint (January 15, 2008), and was issued several more after filing his complaint on July 11, 2008, including RVRs issued on August 5, 2008, September 2, 2008, October 6, 2008, October 13, 2008, and January 13, 2009. (Ex. D to Mot. [26-5].)

6

Clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Plaintiff has failed to allege a restraint which imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. "Temporary lockdown designed to prevent gang-related violence is to be expected as an ordinary incident of prison life." *Velasquez*, 522 F.3d at 563.

Plaintiff alleged that he was placed in STG lockdown, he was denied certain privileges, and he was reclassified to D custody/STG Program. The Fifth Circuit has clearly held, "in the specific context of administrative lockdown, . . . absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." *Velasquez*, 522 F.3d at 562 (internal citation and quotations omitted); *see also Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (dismissing prisoner's due process claims based on his placement in administrative segregation due to his classification as a gang member); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."); *Hurns v. Parker*, 165 F.3d 24, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998).

Moreover, Plaintiff has no protected liberty interest in his security classification, and has no constitutional right to facility privileges. *See Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003) (stating that the Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification"); *Velasquez*, 522 F.3d at 562; *Wilson v. Bundy*, 976 F.2d 957, 958 (5th Cir. 1992) (citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988)) ("A prison inmate does not have a protectable liberty or property interest in his custodial

classification."); *Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir. 1997) (holding that cell restrictions and loss of commissary privileges are "merely changes in the conditions of [ ] confinement and do not implicate due process concerns"); *Williams v. Geo Group, Inc.*, No. 4:08cv67-HTW-LRA, 2008 WL 2724889, at *1 (S.D. Miss. July 10, 2008) ("The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life."); *see also McGowan v. Peel*, No. 3:06-cv-659-DPJ-JCS, 2007 WL 710154, at *3 (S.D. Miss. Mar. 6, 2007) (holding that prisoners have no constitutional right to certain privileges while in prison).

Based on the evidence before the court, Plaintiff has failed to establish a constitutional violation. "A plaintiff must be deprived of some right secured to him by the Constitution or the laws of the United States. . . . In the event there is no constitutional right, the plaintiff's complaint fails." *Hoye v. Nelson*, No. 4:07cv044-M-B, 2007 WL 1321964, at *1 (N.D. Miss. May 3, 2007) (citations omitted). Pursuant to the case law set forth above, Plaintiff's punishment for the RVRs-- reclassification and the denial of privileges-- are not an "atypical and significant hardship" of prison life, and do not implicate the Due Process Clause. *See Sandin*, 515 U.S. at 483-84; *Madison*, 104 F.3d at 768; *Williams*, 2008 WL 2724889, at *1.

However, even if the Due Process Clause were invoked, Plaintiff has failed to show that his due process rights were violated. As discussed below, disciplinary hearings were held for the RVRs at issue, where Plaintiff testified and an investigation was conducted, and Plaintiff was found guilty of the violations. (Resp. [8-2] at 1-3.) Moreover, the evidence reflects that an administrative review is performed every quarter to evaluate Plaintiff's STG status. *See Rodriguez v. Laflore*, 230 F. App'x 351, 352 (5th Cir. 2007) (holding that even if plaintiff's

confinement in administrative segregation for being an STG member did implicate a liberty interest, he failed to demonstrate that he was not afforded due process, where an investigation into his custodial classification was conducted and he was interviewed in connection with same); *see also Hoye*, 2007 WL 1321964, at *1 (quoting *Collins v. King*, 743 F.2d 248, 153-54 (5th Cir. 1984)) (holding that district courts do not "'second-guess' the findings and determinations of prison disciplinary committees[,]" nor does the "Constitution . . . demand 'error-free' decision making. . . ."); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (holding that the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation); *McGowan*, 2007 WL 710154, at *1-*2 (holding that failure to follow MDOC policy and procedure during disciplinary hearing for RVR, without more, simply does not rise to a level of constitutional deprivation).

Plaintiff's Response [28] in opposition to the motion for summary judgment fails to create a genuine issue of material fact as to these claims. Instead, he mainly focuses on claims that have already been dismissed (*i.e.*, excessive force, denial of medical treatment). It is clear from Plaintiff's Response [28] and his other pleadings that he disagrees with his STG status; however, this does not amount to a constitutional violation. *See Rodriguez*, 230 F. App'x at 352 ("The fact that [plaintiff] disagrees with his custodial classification does not state a constitutional claim."). Accordingly, Defendants are entitled to judgment as a matter of law on these claims.

**False Rule Violation Reports**

Plaintiff claims that Defendants Michael Garney and Wallance Carpenter issued him "bogus" RVRs. He claims that Garney and Carpenter were given direct orders from their supervisors to write him false RVRs (*i.e.*, RVRs for violations he did not commit). As a result,

9

he lost certain privileges for thirty days, was reassigned, and had to remain in the STG Program for six more months.

The record reflects that Wallance Carpenter issued Plaintiff an RVR (#66421) on January 15, 2008, for violating Rule 35. Specifically, the RVR states that Plaintiff told Officer Carpenter that he would flood or set fire to his cell if he was not released to the general population the next day. (Resp. [8-2] at 1.) Plaintiff attended a disciplinary hearing where he denied the charges. He was found guilty and was reclassified, reassigned, and received twenty days of isolation. *Id.* Plaintiff filed a request through the Administrative Remedy Program ("ARP") and his relief was denied. (Resp. [8-2] at 11; Compl. [1] at 6.)

The record reflects that Michael Garney issued Plaintiff an RVR (#67095) on March 18, 2008, for violating Rule 19. Specifically, the RVR states that Plaintiff refused to come out of his cell. (Resp. [8-2] at 2.) Plaintiff attended a disciplinary hearing where he denied the charges. He was found guilty and lost thirty days of all privileges. *Id.* Plaintiff claims this RVR should have been dismissed due to administrative error; he did not file an appeal.

In *Ordaz v. Martin*, 5 F.3d 529, 1993 WL 373830 (5th Cir. Sept. 15, 1993), the prisoner plaintiff claimed that the female guards filed false charges of "sexual misconduct" against him, which led to the loss of good time credit and various privileges. The Fifth Circuit noted that the plaintiff was "essentially seek[ing] to relitigate facts that were adjudicated during the disciplinary hearings at which he was found guilty of masturbating in public" and held that he failed to raise an arguable claim for the denial of a federal right. *Ordaz*, 1993 WL 373830, at *6. The court observed that the plaintiff's allegations were "indistinguishable from a malicious prosecution claim. . . ." which the Fifth Circuit has recognized "*may* form the basis of a § 1983

claim." *Id.* (citing *Brummett v. Camble*, 946 F.2d 1178, 1180 and n.2 (5th Cir. 1991)).[6] However, the Fifth Circuit held, "[e]ven assuming that there is a federally protected right to be free from malicious prosecutions (including false disciplinary charges in the confines of a state prison), . . . 'a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor.'" *Id.*

Here, Plaintiff has failed to allege, much less establish, that the disciplinary proceedings terminated in his favor; indeed Plaintiff was found guilty of both RVRs referenced above. (Resp. [8-2] at 2.) Accordingly, he has not made an arguable showing that any constitutional right has been violated. *See also Hoye*, 2007 WL 1321964, at *1 (dismissing plaintiff's claim regarding a "false RVR" *sua sponte,* reasoning that plaintiff's allegation did not amount to a constitutional violation).

Moreover, this court does not "'second-guess' the findings and determinations of prison disciplinary committees[,]" nor does the "Constitution . . . demand 'error-free' decision making. . . ." *Hoye*, 2007 WL 1321964, at *1 (quoting *Collins v. King*, 743 F.2d 248, 153-54 (5th Cir. 1984)); *see also McGowan v. Peel*, No. 3:06cv659-DPJ-JCS, 2007 WL 710154, at *1-*2 (S.D. Miss. March 6, 2007) (internal citations and quotations omitted) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915, where plaintiff claimed that he was innocent of the charges in the RVR, his disciplinary hearing was delayed, and that the report reflected the incorrect date and time that he received a copy of the report; the court stated that a "prison official's failure to follow the prison's own policies, procedures or regulations does not

---

[6]The Fifth Circuit used the term "may" because the issue has not been finally decided. *Id.* (citing *Brummett*, 946 F.2d at 1180 and n.2).

constitute a violation of due process, if constitutional minima are nevertheless met").

Based on the foregoing, Defendants Garney and Carpenter are entitled to judgment as a matter of law on Plaintiff's claims regarding the issuance of false RVRs.

**Failure to Protect**

Plaintiff alleges a failure to protect claim against Christopher Epps. Specifically, he claims that he informed Mr. Epps by letter of a potential assault and/or retaliation by staff members, yet Mr. Epps failed to take any action. Plaintiff asserts that on May 16, 2008, Officer Graner Leverette banged his cuffed wrist against the cell bars, which resulted in bruising and a cut. Plaintiff apparently claims that Mr. Epps should have prevented this from happening.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other prisoners or prison staff. *Hill v. Thomas*, No. 08-50529, 2009 WL 1181504, at *1 (5th Cir. May 1, 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995)); *Dilworth v. Box*, 53 F.3d 1281, No. 94-41088, 1995 WL 295885, at *1-*3 (5th Cir. Apr. 20, 1995); *Doe v. Georgia Dep't Corr.*, 245 F. App'x 899, 903 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837). However, not every injury "by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Hill*, 2009 WL 1181504, at *1 (citing *Farmer*, 511 U.S. at 834; *Horton*, 70 F.3d at 401).

To prevail on a failure to protect claim, a plaintiff must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (citing *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). Deliberate indifference

12

consists of the official being aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer*, 511 U.S. at 837). Furthermore, the Fifth Circuit has held that a negligent failure to protect an inmate is not tantamount to a constitutional violation. *Dilworth*, 1995 WL 295885, at *1-*3 (granting defendants' motion for summary judgment even though the plaintiff alleged he sent a letter to the sheriff notifying him that several guards were harassing him; the court reasoned that the letters failed to establish a genuine issue of material fact regarding whether the sheriff was deliberately indifferent to the plaintiff's alleged risks).

The record reflects that Plaintiff sent Mr. Epps a letter sometime before the May 16, 2008 incident, complaining of his SGT status. At the end of the letter Plaintiff states, "I ask that I be released from lockdown and sent to George County, I feel that the staff of SMCI will retaliate or do bodily harm to me on Penny Bufin's (sic) word." (Resp. [8-2] at 5.) Mr. Epps, or one of his staff members, responded to the letter on February 13, 2008, stating "I am in receipt of your correspondence and have forwarded your request to the appropriate staff for review, handling, and response. Upon completion of their findings, you will be notified." *Id.* at 6.

There is no evidence that Mr. Epps was deliberately indifferent to a condition posing a substantial risk of serious harm. Plaintiff's letter is very vague and reveals only innocuous and unspecified threats at best. *See Grissom v. Patterson*, 14 F.3d 52, Nos. 91-7137, 92-7244, 1993 WL 560256, at *3 (5th Cir. 1993) (holding that sheriff was entitled to judgment as a matter of law on prisoner's failure to protect claim; reasoning that despite the sheriff's failure to investigate the prisoner's claims or take other reasonable precautions, evidence of letters written

to sheriff–which neither specified the nature of the threats nor provided any other evidence or details that he was in danger of physical harm– were insufficient as a matter of law to support a finding that the sheriff was deliberately indifferent). Even so, Mr. Epps stated that he would forward the request to the appropriate individual to handle the matter. Such a response does not establish deliberate indifference. *See Grissom*, 1993 WL 560256, at *3 (internal quotations and citations omitted) ("Wantonness, in the context of a failure-to-protect claim, requires that the defendant be conscious of the inevitable or probable results of [his] failure to take preventative action.").

Moreover, Mr. Epps may be held liable for a Section 1983 violation only if he was either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *See Thompkins*, 828 F.2d at 304; *see also Ashcroft*, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "It is facially evident that this test cannot be met if there is no underlying constitutional violation." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) (en banc). This court has already held that there was no underlying constitutional violation regarding the alleged assault by Officer Leverette. *See* Scheduling and Case Management Order [25] at 4 ("The court finds that Plaintiff's injuries suffered as a result of the alleged excessive force were *de minimis*.") (citing *Copeland v. Nunan*, 250 F.3d 743, No. 00-20063, 2001 WL 274738, at *2 (5th Cir. Feb. 21, 2001); *Hudson v. McMillian*, 503 U.S. 1 (1992)).

The evidence and testimony submitted by Plaintiff fails to establish a failure to protect

claim. Accordingly, Christopher Epps is entitled to judgment as a matter of law on this claim.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [26] should be GRANTED. Accordingly,

IT IS, THEREFORE, ORDERED:

1. That Defendants' Motion for Summary Judgment [26] is GRANTED and this action is dismissed with prejudice.

2. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 13th day of August, 2009.

                                          s/ Michael T. Parker
                                          United States Magistrate Judge